UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PENDLETON DIVISION

DANIEL LOREN JENKINS,

        Plaintiff,

    v.

COLETTE PETERS, ROB PERSSON, ERIN REYES, HUGO ENRIQUEZ, DONALD W. GOLDEN, LT. TROTT, and H. ROSSI,

        Defendants.

Case No. 2:23-cv-01202-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Daniel Jenkins, who was formerly incarcerated with the Oregon Department of Corrections ("ODOC") and is representing himself in this matter, brings this civil rights action under 42 U.S.C. § 1983 against ODOC employees. Plaintiff asserts a single First Amendment claim based on two events. First, plaintiff alleges that he "was punished for writing a letter to ODOC Director Colette Peters in which he was later charged with an institutional rule violation alleging the use of written 'disrespectful language' in said letter." Am. Compl. 2, ECF 22. Second, plaintiff alleges that a grievance he filed in December of 2022 was wrongly returned to him for corrections because the grievance coordinator determined that he had not complied with rules requiring inmates to "use a civil and respectful tone and manner in their written [g]rievances to attempt to resolve the issue or concern." *Id.* at 8. Both plaintiff and defendants have moved for summary judgment. As explained in more detail below, defendants' Motion for

1 – OPINION AND ORDER

Summary Judgment (ECF 29) is granted because defendants are entitled to qualified immunity against plaintiff's claims, and plaintiff's Motion for Summary Judgment (ECF 28) is accordingly denied as moot.

I.   **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

II.   **Background**

The relevant facts are generally undisputed. Sometime in late 2020, while he was incarcerated at Two Rivers Correctional Institution ("TRCI"), plaintiff initiated a grievance.[1] The

---

[1] *See* Pl. Mot. Summ. J., Ex. 102 at 1, ECF 28.

original grievance, TRCI-2020-11-034, is not part of the record here.[2] In any event, plaintiff appealed the initial grievance response he received by completing a "Grievance Appeal Form" dated March 20, 2021.[3] On April 7, 2021, TRCI Grievance Coordinator Arnell Enyon returned the initial appeal to plaintiff for corrections; Enyon directed plaintiff to "[p]lease remove the first sentence [of the Grievance Appeal Form], as it is disrespectful. (No need to rewrite – you many cross out and initial."[4] Plaintiff apparently fixed the issue and resubmitted the grievance appeal, though there does not appear to be a copy of the "corrected" version in the record.[5] In the meantime, plaintiff wrote a letter to ODOC Director Colette Peters, dated April 14, 2021, regarding Enyon's processing of the grievance appeal.[6] Plaintiff letter to Peters states:

> Ms. Peters:
>
> Please find copies of a pending grievance appeal and the enclosed cover page calling for correction. I only ask for your attention to Ms. Eynon's action, and not for intervention in said grievance. I've already crossed out and initialed the offending first sentence and resubmitted.
>
> Ms. Eynon took offense to said first sentence which reads:
>
>> "What pathetic excuses for ODOC public service are Mr. Hank Harris and Mr. Michael Markle."
>
> Apparently, Ms. Eynon took offense at the usage of the adjective "pathetic." According to Meriam-Webster's Collegiate Dictionary, 11th ed., the term "pathetic" means
>
>> (1) Having a capacity to move one to either compassionate or contemptuous pity;
>> (2) Marked by sorrow or melancholy;
>> (3) Pitifully inferior or inadequate'

---

[2] *See id.*
[3] *Id.*
[4] *Id.*, Ex. 103 at 1, ECF 28. The apparently offending language on plaintiff's grievance appeal form was as follows: "What pathetic excuses for ODOC public servants are Mr. Hank Harris and Mr. Michael Markle." *Id.*, Ex. 102 at 1, ECF 28.
[5] *See* Golden Decl. Ex. 1 at 1, ECF 30.
[6] *Id.* at 5.

3 – OPINION AND ORDER

   (4) Absurd or laughable.

According to my Roget II, The New Thesaurus, 2003, 3rd ed., the synonymic substitutions for "pathetic" read:

Piteous, pitiable, pitiful, poor, rueful.

Now, if I had intended to be uncivil and disrespectful under OAR 291-109-0220 then I would have written the opening line thus:

> "Harris and Markle are a couple of lying, dick-sucking bitches, each trying to cover their respective sorry fucking asses."

So here is my beef. Your Ms. Eynon is an ignorant cunt who can't discriminate the subtlety of the English language. She is ignorant which, according to my Roget II Thesaurus means, among other things, that Ms. Eynon is: not aware or informed, unconscious, unschooled, backward, nescient, without education or knowledge, and idiomatically – in the dark, out to sea, out to lunch.

Sincerely,

Daniel Jenkins.[7]

 Peters' office responded to plaintiff on April 20, 2021, in a letter that "acknowledge[d] that our office has received your communication . . . to Director Peters" and also informed plaintiff that his "use of language in this letter, primarily the use of the word 'cunt' towards a staff member, will not be tolerated or responded to," and that Peters' office had "forwarded [plaintiff's] communication to Superintendent Erin Reyes."[8] Plaintiff was written up in a Misconduct Report dated April 29, 2021, and later, after a disciplinary hearing, found to have violated Rule 2.11, Disrespect II when he "directed hostile, sexual, abusive, or threatening language . . . towards another person in a manner or under circumstances that created a threat to the safety, security, or orderly operation of the facility[.]"[9] Plaintiff received the sanctions of

---

[7] Golden Decl., Ex. 1 at 5–6, ECF 30 (remainder of plaintiff's signature block omitted).
[8] Pl. Mot. Summ. J., Ex 104 at 1, ECF 28.
[9] Golden Decl., Ex. 1 at 1, ECF 30.

4 – OPINION AND ORDER

"Loss of privileges" for seven days, with credit for time served, and a $25 fine that was "suspended pending no major rule violations."[10] Plaintiff asserts that the punishment he received for "disrespectful language" was "unlawful retaliation for the exercise of his [First] Amendment . . . right to petition the government for redress of grievance[s]." Am. Compl. 2, ECF 22.

The second incident at issue here arose after plaintiff submitted another grievance, TRCI_2022_10_116, in December of 2022.[11] Plaintiff appealed the response from that grievance in January of 2023, and then appealed a second time in February.[12] On March 7, 2023, Hearings Officer Rossi returned the second appeal form to plaintiff for correction.[13] Rossi wrote that he was "returning [the] grievance" to plaintiff because the appeal form "contains disrespectful content" and thus violated O.A.R. 291-109-0220(1).[14] Rossi quoted the applicable rule, which provided that "[Adults in Custody] shall use a civil and respectful tone and manner in their written grievances to attempt to resolve the issue or concern," and identified the offending passage in plaintiff's appeal form: "See page 2 – third line from bottom in body of complaint."[15] Rossi instructed plaintiff that he "may make corrections and resubmit for further review."[16] Plaintiff apparently decided not to submit a corrected appeal form because he was "fearful he would be subjected to retaliation and a repeat of the April 14, 2021 letter incident" which resulted in discipline against him. Pl. Mot. Summ. J. 10, ECF 28. Plaintiff asserts that the "prior restraint censorship by . . . Rossi violated [his] right to petition the government for a redress of grievance." Am. Compl. 9, ECF 22.

---

[10] *Id.* at 1–2.
[11] Rossi Decl., Ex. 2 at 14, ECF 31.
[12] *Id.* at 8, 10.
[13] *Id.* at 8.
[14] *Id.* at 1.
[15] *Id.*
[16] *Id.*

5 – OPINION AND ORDER

**III.    Discussion**

Defendants move for summary judgment on plaintiff's First Amendment claims on three distinct grounds. First, defendants assert that "neither Plaintiff's prison disciplinary hearing nor Mr. Rossi's grievance processing implicated Plaintiff's First Amendment right to petition the government for redress of grievances because Plaintiff was never disciplined for any prison grievance or appeal." Defs. Mot. Summ. J. 2, ECF 29. Next, defendants argue that plaintiff's "prison disciplinary hearing did not infringe his First Amendment right to free speech because Plaintiff was not sanctioned for language in any prison grievance." *Id.* Finally, defendants assert that they are entitled to qualified immunity against plaintiff's claims. It is this last argument that resolves the case and thus the analysis begins there.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation and quotation omitted). "The purpose of qualified immunity is to strike a balance between the competing 'need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' " *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (quoting *Pearson,* 555 U.S. at 231).

"Whether qualified immunity can be invoked turns on the objective legal reasonableness of the official's acts," and the "reasonableness of official action, in turn, must be assessed in light of the legal rules that were clearly established at the time the action was taken." *Ziglar v. Abbasi*, 582 U.S. 120, 151 (2017) (simplified). In this way, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.

When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 794 (9th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

A defendant is "entitled to qualified immunity if (1) the alleged conduct did not violate a constitutional right or (2) that right was not clearly established at the time of the alleged violation." *Melnik v. Dzurenda*, 14 F.4th 981, 985 (9th Cir. 2021) (citing *Wood v. Moss*, 572 U.S. 744, 757 (2014)). Courts may "exercise their sound discretion in deciding which of the two prongs . . . should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Here, plaintiff has failed to carry the heavy burden of showing that defendants' conduct violated a "clearly established" right and thus defendants are entitled to qualified immunity. *See Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-cv-01190-IM, 2024 WL 326598, at *3 (D. Or. Jan. 29, 2024) (explaining the "heavy burden to prove a clearly established right for the purposes of qualified immunity"); *Babiy v. Oregon Health & Sci. Univ.*, No. 3:23-cv-01562-HZ, 2024 WL 1770485, at *5 (D. Or. Apr. 22, 2024) (same). "Conduct violates clearly established law only when, 'at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Babiy*, 2024 WL 1770485 at *5 (quoting *al-Kidd*, 563 U.S. at 735). While it is not necessary that there be an existing case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Jimenez*, 2024 WL 326598 at *3 (quoting *al-Kidd*, 563 U.S. at 741).

It is well-established that "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the

corrections system." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) (alteration omitted). "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities . . . as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)); *see also Entler v. Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances and to pursue civil rights litigation in the courts[.]") (citations omitted). "Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment," including where prison officials retaliate against an inmate for seeking redress of grievances. *Rodriguez v. Anderson*, No. 2:20-cv-01914-AR, 2023 WL 8654285, at *3 (D. Or. Nov. 13, 2023), *report and recommendation adopted,* No. 2:20-cv-01914-AR, 2023 WL 8716871 (D. Or. Dec. 18, 2023) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)).

An inmate's claim for First Amendment retaliation has five elements: 1) the plaintiff engaged in protected conduct; (2) the defendant took some adverse action against the plaintiff; (3) there is a causal connection between the protected conduct and adverse action; (4) the adverse action had a chilling effect on the plaintiff's First Amendment rights; and (5) the defendant's "retaliatory action did not advance legitimate goals of the correctional institution[.]" *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Inmates have a protected constitutional right to seek redress of grievances, and thus an inmate's informal or formal threat to file a grievance or a suit, or a request for a grievance form is protected conduct under the First Amendment. *See Entler*, 872 F.3d at 1039 (explaining that "[t]he most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison

8 – OPINION AND ORDER

grievances and to pursue civil rights litigation in the courts," and that the "form of the complaints—even if verbal [or] written—is of no constitutional significance, and . . . threats to sue fall within the purview of the constitutionally protected right to file grievances").

It is true, as plaintiff asserts, that the use of "disrespectful language in a prisoner's grievance is . . . protected activity under the First Amendment[.]" *Brodheim*, 584 F.3d at 1271, and generally speaking, "prison officials may not punish an inmate merely for using hostile, sexual, abusive or threatening language in a written grievance." *Bradley*, 64 F.3d at 1282 (internal quotation marks omitted); *see also* Pl. Mot. Summ. J. 13, 16, ECF 28. Moreover, the particular "label" that the prison places on an inmate's communication does not control whether it is considered protected conduct; communications that are "part of the grievance process" but are not made using an official grievance form are also protected under the First Amendment. *See, e.g.*, *Anderson v. Sanborn*, No. 2:21-cv-00561-KJM-EFB, 2023 WL 2993242, at *4 (E.D. Cal. Apr. 18, 2023), *report and recommendation adopted,* No. 2:21-cv-00561-KJM-EFB, 2023 WL 4711037 (E.D. Cal. July 24, 2023) (citing *Brodheim*, 584 F.3d at 1271 n.9).

Starting with the first incident involving plaintiff's letter to Peters, it is at least debatable whether the letter was protected conduct as a communication that was "part of the grievance process." Nowhere in the letter does plaintiff threaten to sue or file another grievance based on Enyon's initial return of plaintiff's grievance appeal form for correction. *See Entler*, 872 F.3d at 1037 (finding that inmate's letter stating that he "will initiation litigation for violation of my religious rights" was conduct protected by the First Amendment); *Jones*, 791 F.3d at 1029, 1036 (finding that prison official was not entitled to qualified immunity for disciplining inmate for verbal threats to file suit for religious discrimination). In fact, plaintiff specifically wrote that he

9 – OPINION AND ORDER

was not asking for Peters to "interven[e]" in the underlying grievance that Enyon had processed, nor does plaintiff ask Peters to take any action regarding Enyon's processing of his grievance.

Additionally, plaintiff's letter to Peters, even broadly construed, is not an attempt to raise a complaint about the conditions of his confinement. *Hunter v. Haar*, No. 2:14-cv-09886-R-JC, 2018 WL 6113098, at *6 (C.D. Cal. July 19, 2018), *report and recommendation adopted,* No. 2:14-cv-09886-R-JC, 2018 WL 6118555 (C.D. Cal. Aug. 27, 2018) ("In general, an inmate's complaint is protected by the First Amendment simply when it brings to the attention of prison officials the inmate's concerns about problems with his conditions of confinement.") (citing *Jones*, 791 F.3d at 1035–36); *Uribe v. McKesson*, No. 1:08-cv-01285-SMS, 2011 WL 9640, at *2, 12 (E.D. Cal. Jan. 3, 2011) (finding inmate's verbal communication to prison officer that he "needed to talk to the sergeant about the floor officers' refusal to send out his legal mail and their misconduct," the latter of which included an alleged physical assault, was protected activity under the First Amendment). Plaintiff's letter to Peters, in other words, does not carry the type of "grievance-like" hallmarks that courts have previously found to be protected conduct under the First Amendment. *See Holmes v. Miller-Stout*, No. 3:17-cv-05145-RJB, 2018 WL 828384, at *1 (W.D. Wash. Feb. 12, 2018) (ruling that a written "kiosk" message from inmate stating "[m]aybe there will be [a riot] here if the South African born Douglas attempts to my hair again—or you and Inslee will all lose your jobs. I have had enough. The US SUP CT has accepted a case on the Issue-Holv V. Hobbs and prison hair" was not a "grievance like" written message subject to First Amendment protection).

Admittedly, and importantly, the analysis of whether plaintiff's letter was protected conduct is not straightforward. It obviously did not constitute a "true threat," conduct which is not protected under the First Amendment. *See United States v. Szabo*, 760 F.3d 997, 1002 (9th

Cir. 2014) (explaining that a "true threat of violence" is not "protected speech"). In some sense, the letter is more akin to circumstances where courts have found that "verbal challenges to prison officials that are argumentative, confrontational, and disrespectful are not protected by the First Amendment." *Garcia v. Strayhorn*, No. 3:13-cv-00807-BEN-KSC, 2014 WL 4385410, at *7 (S.D. Cal. Sept. 3, 2014) (collecting cases). Although, here, plaintiff's letter was a written communication to a single prison official, which does not carry with it the same kind of institutional security concerns as a verbal confrontation with a prison officer in front of other inmates. *See Richey v. Dahne*, 733 F. App'x 881, 884 (9th Cir. 2018) ("Nothing about *Brodheim* or our holding today should be construed as suggesting that prisoners have a right to publicly use disrespectful language in the broader prison environment. Such actions would plausibly raise legitimate penological concerns related to the security of guards and the desirability of maintaining harmonious relationships between guards and prisoners to the extent possible."). Neither the parties' briefing, nor the court's own exhaustive research, has revealed a case that analyzed whether a letter like this one—in which an inmate specifically states that he is not seeking intervention with a currently pending grievance, does not contain even an oblique threat to seek legal recourse, or any request for Peters to take any particular action, and indeed consists of little more than a vulgar insult against Enyon's intelligence—was protected conduct. *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (explaining that when courts examine questions of qualified immunity, the constitutional right at issue must be identified with "specificity" and "not at a high level of generality") (simplified).

But coming to a final conclusion on that issue is not necessary. It is enough to say that plaintiff has not carried the burden to show that his letter fit neatly into the specific contours of the settled law regarding First Amendment rights in the prison context such that "any reasonable

official in [defendants'] shoes would have understood" that they were violating plaintiff's constitutional rights when they disciplined plaintiff for the disrespectful language toward Enyon in the letter. *City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 611 (2015); *see also Entler*, 872 F.3d at 1044–45 (finding that a prisoner's threat to file a criminal complaint against prison officials was protected conduct but that the defendants were entitled to qualified immunity because there was "neither Ninth Circuit precedent nor out-of-circuit authority . . . let alone a robust consensus of cases of persuasive authority" establishing the right at the time of the incident); *Williams v. Stewart*, No. 1:18-cv-00343-DCN, 2019 WL 13241679, at *5 (D. Idaho Apr. 15, 2019) (citing *Brodheim* and *Richey* and explaining that "if an inmate uses disrespectful language in some other context—such as in a frivolous writing that does not qualify as a substantive grievance—then the government may indeed have legitimate penological concerns related to the security of guards and the desirability of maintaining harmonious relationships between guards and prisoners to the extent possible") (internal quotation marks omitted).

      The difficulty the court has experienced in attempting to determine whether plaintiff's letter to Peters is protected conduct necessarily demonstrates that the prison officials' response to plaintiff's letter was not barred by any existing, clearly delineated settled law. *al-Kidd*, 563 U.S. at 743 ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). Therefore, defendants are entitled to qualified immunity on plaintiff's claim that the punishment he received as a result of the letter violated his First Amendment rights.

      Turning now to the second incident at issue, plaintiff asserts that defendant Rossi's rejection of his December 2022 grievance "was not justified on the ground that the use of non-threatening language in the complaint is subject to restraint simply to eliminate unflattering or

unwelcome opinions by a prisoner," and that the rule codified at O.A.R. 291-109-0220 requiring inmates to use a "civil and respectful tone" in their grievance is "without color of law" and unlawfully "chills the First Amendment right of the plaintiff to petition . . . for redress" for his grievances. *Id.* at 10–11.

Defendants are entitled to summary judgment on this claim for several reasons. For one, inmates do not have a separate constitutional right "to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Further, "[a]n allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983." *Evans v. Skolnik*, 637 F. App'x 285, 288 (9th Cir. 2015) (citing *Ramirez*, 334 F.3d at 860); *see also Jackson v. Surber*, No. 2:22-cv-01832-SB, 2023 WL 8257863, at *5 (D. Or. Nov. 29, 2023) (citing *Evans*, 637 F. App'x at 288). As explained above, plaintiff is correct that the Ninth Circuit has held that "disrespectful language in a prisoner's grievance is itself protected activity under the First Amendment." Pl. Mot. Summ. J. 16, ECF 28 (quoting *Brodheim*, 584 F.3d at 1271). Since *Broadheim*, however, the Ninth Circuit has "clarif[ied] . . . that a prison official merely requesting that a prisoner rewrite a grievance is not a First Amendment violation." *Richey*, 733 F. App'x at 883. Rather, the First Amendment violation occurs when a prison official refuses to accept or process a grievance based on "disrespectful language" or some other content-based restriction. *Id.* (explaining that "the [First Amendment] violation . . . occurred when [the prison official] refused to allow the grievance to proceed through the administrative process after [the plaintiff] did not rewrite it in a way that satisfied [the prison official's sense of propriety]"). Here, the undisputed evidence in the record shows that Rossi returned plaintiff's second appeal form for containing allegedly disrespectful language, and then specifically invited plaintiff to "make corrections and resubmit for further

13 – OPINION AND ORDER

review."[17] This is not a constitutional violation because plaintiff still had the opportunity to resubmit the grievance in a different form, and Rossi provided plaintiff with specific instructions as to what changes should be made. *See Hammler v. Lyons*, No. 1:19-cv-07650-AWI-GSA, 2021 WL 2805861, at *7 (E.D. Cal. July 6, 2021) *report and recommendation adopted sub nom. Hammler v. Lyons*, No. 1:19-cv-01650-AWI-GSA, 2021 WL 3164277 (E.D. Cal. July 27, 2021) ("Merely returning a grievance to an inmate or asking the inmate to rewrite it in a more appropriate manner is not a violation of the right to petition for redress, but an official action that stops the grievance process—such as an outright refusal to accept a grievance—does.") (citations omitted); *Becker v. Carney*, No. 3:16-cv-05315-RBL-JRC, 2020 WL 5519342, at *10 (W.D. Wash. July 15, 2020), *report and recommendation adopted,* No. 3:16-cv-05315-RSM-JRC, 2020 WL 5513802 (W.D. Wash. Sept. 14, 2020) ("[T]he Ninth Circuit has never held that merely refusing to process a grievance—without some additional punitive action or threat of punitive action—amounts to retaliation.") (citing *Richey*, 733 F. App'x at 884).

     Plaintiff's contention that he could not re-write the grievance appeal because the returned second appeal form did not provide any "official specification as to what word or words offended . . . Rossi's sense of decorum" is belied by the record. As mentioned above, the returned appeal form specifically states that the offending language was located on "page 2 – third line from bottom in body of complaint."[18] There, plaintiff had written that the officer about whom he was complaining was "willing to prostitute yourself, your decency, your honesty in order to hold the Blue Line."[19] There is no mystery about which language Rossi had directed plaintiff to remove from the appeal form.

---

[17] Rossi Decl., Ex. 2 at 1, ECF 31.
[18] Rossi Decl., Ex. 2 at 1, ECF 31.
[19] *Id.* at 5 (internal quotation marks omitted).

Finally, plaintiff asserts that he did not submit a corrected appeal form that removed the offending language because he "was fearful he would be subjected to retaliation and a repeat of the April 14, 2021 letter [to Peters] incident" discussed above. Pl. Mot. Summ. J. 10, ECF 28. That argument is without merit. For one thing, plaintiff does not explain how complying with Rossi's instructions to *remove* allegedly offensive language from a grievance appeal form would somehow cause prison officials to retaliate against him for using offensive language. Moreover, plaintiff cannot show that he actually believed prison officials would retaliate against him on this basis; whatever fear of retaliation plaintiff harbored was not sufficient to prevent him from a filing grievance or seeking an appeal, or from actually using the allegedly offending language on his 2022 appeal form that Rossi returned for correction. *See Monical v. Jackson Cnty.*, No. 1:17-cv-00476-YY, 2022 WL 17736110, at *7 (D. Or. Dec. 16, 2022) ("In determining whether a threat rendered the grievance process effectively unavailable, the court first considers whether the prisoner actually believed the prison official would retaliate against him, and then considers whether the official's statements could reasonably be viewed as a threat of retaliation.") (citing *McBride v. Lopez*, 807 F.3d 982, 987–88 (9th Cir. 2015).

## ORDER

Defendants' Motion for Summary Judgment (ECF 29) is granted and plaintiff's Motion for Summary Judgment (ECF 28) is denied as moot. Judgment shall be entered for defendants and this case is dismissed.

DATED August 28, 2025.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

15 – OPINION AND ORDER